IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HASSAN JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:20-cv-00249 |
| C/O CHRISTOPHER WICKING, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the Court is a pro se complaint for alleged violation of civil rights (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Hassan Jackson, a pretrial detainee in the custody of the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee. Plaintiff also filed an application to proceed in forma pauperis (IFP) (Doc. No. 4), which the Court will grant by separate order. The complaint is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review

of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

2

Case 3:20-cv-00249   Document 5   Filed 11/23/20   Page 2 of 8 PageID #: 36

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that, on February 7 or 8, 2020, he filed a complaint under the Prison Rape Elimination Act (PREA) against corrections officer Defendant Christopher Wicking, via Wicking's commanding officer, Defendant Lt. Chesser. (Doc. No. 1 at 5.) Chesser told Plaintiff that there would be an investigation into the matter. (*Id.*) During a subsequent conversation with a mental health counselor, Plaintiff stated that Wicking had entered his pod on one occasion after the PREA complaint was filed, during the service of breakfast, and the counselor responded that Wicking was not permitted to enter the pod while the PREA investigation was ongoing. (*Id.* at 7.) Plaintiff was told that the counselor would "speak to someone about this and try to make sure this doesn't happen again." (*Id.*)

On February 14, 2020, Wicking filed a Disciplinary Incident Report against Plaintiff after (in Wicking's words) the PREA "allegations were determined to be false." (*Id.* at 7.) Plaintiff claims that this disciplinary charge was retaliatory. (*Id.* at 5.) It appears that Defendant Vargas was the officer appointed to investigate the disciplinary charge. (*See id.* at 13.) Plaintiff's request for counsel to represent him before the disciplinary review board was denied, but the review board, chaired by Defendant Levy, dismissed all accusations made by Wicking at a hearing on February 18, 2020. (*Id.* at 7.)

As a result of the PREA complaint, Wicking is no longer assigned to work in Plaintiff's pod. (*Id.* at 6, 7.) However, Plaintiff's desire—and the only substantive relief requested in the complaint—is for Wicking's employment to be terminated. (*Id.* at 6.) He alleges that "[a]ll DCSO employee staff members have concealed and kept PREA complaint evidence from [him],"

particularly "video camera footage [that would allow him] to point out the actual moment [Wicking] violated [his] person." (*Id.* at 8.) Plaintiff states that "multiple [DCSO] employees" told him they had viewed the security footage. (*Id.* at 10.) He claims that the withholding of that footage from him, combined with the denial of his request for legal counsel, violated his rights under federal and state law. (*Id.*) In addition to Wicking's termination, Plaintiff requests "the courts to enforce Title 9, Chapter 8, Part 3, statute 9-8-307 to its fullest extent of the law." (*Id.* at 6.)

IV. ANALYSIS

Plaintiff claims that the handling of his PREA complaint and the disciplinary charge filed by Wicking violated his federal constitutional rights to due process and to be free from cruel and unusual punishment, as well as various provisions of the Tennessee constitution. (Doc. No. 1 at 5.) He also claims that Wicking filed the disciplinary charge against him in retaliation for his filing of the PREA complaint against Wicking, which the Court liberally construes as a claim under the First Amendment.

A. PREA Complaint

With regard to Plaintiff's contention that the consideration of his PREA complaint by Defendant Chesser amounted to a due process violation or cruel and unusual punishment, Plaintiff fails to state a viable claim to relief. He simply has no constitutional right to compel a proper investigation of his PREA complaint or the disclosure of video footage, or even to have that complaint investigated at all. *See Violett v. King*, No. 3:19-CV-P524-CHB, 2019 WL 6709391, at *3 (W.D. Ky. Dec. 9, 2019) (citing *Diamond v. Charles*, 476 U.S. 54, 75 (1986); *Jacoby v. PREA Coordinator*, No. 5:17-CV-053-MHH-TMP, 2017 WL 2962858, at *4 (N.D. Ala. Apr. 4, 2017) ("Whether an inadequate [PREA] investigation, or the failure to investigate at all, no § 1983 liability is created."), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11,

4

2017)); *Gresham v. Granholm*, No. 2:09-cv-231, 2010 WL 104700, at *3 (W.D. Mich. Jan. 7, 2010) (dismissing inmate's Section 1983 claim for refusal to investigate alleged crime by staff). Nor does PREA itself confer any rights for Plaintiff to vindicate here; rather, the statute authorizes grant money and commissions a study into the problem of prison rape, without granting to prisoners any private right of action. *See*, *e.g.*, *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (collecting cases). With no federal right at stake, the state constitutional and statutory provisions that Plaintiff alleges were flouted by Defendants in reviewing his PREA complaint are not remediable under Section 1983—which "is addressed to remedying violations of federal law, not state law," *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *6 (W.D. Ky. Nov. 13, 2018)—nor are they applicable in the context of this civil claim concerning a prison administrative proceeding. *See generally Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (finding the PREA grievance process to be "the relevant . . . administrative remedy").

None of this is to say that the issues addressed by PREA are not serious and extremely concerning. It is only to say that PREA provides no basis for a cause of action for Plaintiff here.

Accordingly, the claims involving the alleged mishandling of Plaintiff's PREA complaint will be dismissed.

### B. Retaliatory Disciplinary Charge

As for Plaintiff's claim that Defendant Wicking retaliated against him by filing a disciplinary charge against him one week after he (Plaintiff) had complained about Wicking, it arises under the First Amendment. To maintain such a claim, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse

5

action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). The pursuit of a prison grievance—including, presumably, a complaint under PREA—is protected conduct, so long as the grievance is not frivolous. *Gennoe v. Washburn*, No. 3:19-cv-00478, 2019 WL 5693929, at *6 (M.D. Tenn. Nov. 4, 2019) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see Treadwell v. King*, No. 2:20-CV-10280, 2020 WL 815589, at *2 (E.D. Mich. Feb. 19, 2020) (finding nonfrivolous PREA filing to be protected conduct). Here, Plaintiff attaches to his complaint a brief communiqué disposing of Plaintiff's PREA complaint as "unfounded" (Doc. No. 1 at 14), as well as the disciplinary charge of "False Report/Allegations" that is explicitly based on the fact that the PREA "allegations were determined to be false." (*Id.* at 12.) For purposes of initial review, however, and viewing the complaint in the light most favorable to Plaintiff, the Court cannot find that Plaintiff's PREA complaint—which is not included in the record of this case—is frivolous based solely upon its dismissal by DCSO officials. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) ("Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit."). The filing of the PREA complaint is therefore presumed to be protected conduct.

The Court further finds, for purposes of initial review, that being confronted with a disciplinary charge and potential punishment over filing an unfounded PREA report is a sufficiently adverse action to support Plaintiff's retaliation claim. The charge against Plaintiff in this case included a count for "Violation of State or Federal Law," along with the notation that "[i]t is a crime to make a false PREA report." (Doc. No. 1 at 12.) Furthermore, the disciplinary

charge undeniably was explicitly motivated by Plaintiff's protected PREA filing. Plaintiff therefore sufficiently alleges a nonfrivolous retaliation claim against Wicking. He does not, however, allege any retaliatory conduct by any other defendant. Accordingly, Defendants Chesser, Vargas, and Levy will be dismissed from the action, and the retaliation claim against Wicking in his individual capacity[1] will be allowed to proceed.

Finally, the Court notes that the complaint's only request for relief from any defendant is the request for Wicking's employment to be terminated. (Doc. No. 1 at 6.)[2] The Court does not have the authority to grant this relief under Section 1983. *Andrews v. Jordan*, No. 3:18-CV-P606-DJH, 2019 WL 1558696, at *2 (W.D. Ky. Apr. 10, 2019) (citing, *e.g.*, *Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983," and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]")). Plaintiff will therefore need to amend his complaint to request appropriate relief.

---

[1] The complaint specifies that Wicking is sued in his official capacity but does not indicate whether he is sued in his individual capacity. (Doc. No. 1 at 2.) Despite the official-capacity denomination, the complaint against Wicking does not allege the execution of a municipal policy of filing retaliatory disciplinary charges, as would be required to advance the official-capacity claim—which is the same as a claim against his municipal employer. *See Alkire v. Irving*, 330 F.3d 802, 810, 815 (6th Cir. 2003). The "official capacity" specification here may well stem from confusion that Plaintiff, proceeding pro se, may have as to the true nature of an official-capacity claim. In any event, the Court finds that the nature and substance of Plaintiff's allegations sufficiently place Wicking on notice that the retaliation claim is asserted against him in his individual capacity. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her "individual capacity," failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.").

[2] Plaintiff further requests that "the courts" enforce "statute 9-8-307." (Doc. No. 1 at 6.) If this request refers to Section 9-8-307 of the Tennessee Code, as seems likely, that statute defines the jurisdiction of the Tennessee Claims Commission and is not properly invoked in this Section 1983 action.

## **CONCLUSION**

As explained above, the complaint states a nonfrivolous retaliation claim against Defendant Wicking that will proceed for further development. Defendants Chesser, Vargas, and Levy will be dismissed from this action.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE